

**SIGNED this 15th day of June, 2012.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 96-10215-CAG |
| | § | |
| CONQUEST AIRLINES CORP., | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S OBJECTION TO CLAIM OF TRAVIS COUNTY

Before the Court is Objection to Claim of Travis County filed by Trustee C. Daniel Roberts on January 26, 2012 (docket no. 732). Travis County filed a Response in opposition on February 14, 2012 (docket no. 733). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is deemed a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). This matter is referred to this Court under the District's Standing Order of Reference. Venue is proper under 28 U.S.C. §§ 1408 and 1409. A hearing was held on April 3, 2012 to consider the Objection.

## BACKGROUND

Conquest Airlines Corporation ("Debtor") filed a voluntary Chapter 11 petition on January 23, 1996 (docket no. 1). The Court confirmed the Amended Chapter 11 Plan on December 9, 1996 (docket no. 303). On motion of Creditor Jet Acceptance Corporation, the case was converted to Chapter 7 on September 10, 1997 (docket no. 437). A Chapter 7 Trustee ("Trustee") was subsequently appointed (docket no. 475). The Trustee has liquidated much of the estate, including various items of personal property belonging to the Debtor located in Jefferson County, Texas and Travis County, Texas (*see* docket no. 476, Order Approving Motion to Sell Property).

The Travis County Tax Assessor-Collector filed a series of claims based upon tax liens on behalf of Travis County, City of Austin, Austin Independent School District, and Austin Community College (collectively "Travis County") in 1996, 1997, and 1998 (claims nos. 76, 94, 177, 179, 197, 267, 275). Each claim was intended to be an amendment of the previous claim (docket no. 733, at 1). The final amount claimed by Travis County is $509,277.35 for taxes from the years 1990 through 1997 (*id.*).

The final sum claimed was for ad valorem taxes on personal property of the Debtor (*id.*). The Trustee has objected to those allegedly secured claims on the grounds that they did not attach to any property or proceeds that the Trustee proposed to distribute in the case (*see* docket no. 732, at 2). The Trustee argues that Travis County's tax lien attaches only to the personal property sold in Travis County and that it did not attach to the personal property sold in Jefferson County. In its response to the Trustee's Objection, Travis County argues that its tax liens attached to the Debtor's personal property regardless of the fact that it was located in—and subject to—a separate taxing authority's jurisdiction.

2

The Trustee and Travis County agree that Travis County's tax lien is an allowed secured claim up to the extent of the gross value of the property to which the Travis County tax lien attached and perfected. The tax lien against the proceeds from the sale of the Debtor's property located in Travis County and subject to the taxing authority of Travis County is not in dispute.

This Court must decide if the Travis County tax liens attached to the Debtor's personal property that was not the property against which the relevant taxes were assessed and whose situs was outside of the taxing jurisdiction of Travis County. Travis County has not argued before this Court and at no point has any party in interest indicated to this Court that the personal property located in Jefferson County had at any point been located in or taxed by Travis County. The issue is whether a Travis County tax lien can attach to personal property that is located in and subject to another county's taxing jurisdiction.

The Court acknowledges that the language of the pertinent statute is subject to more than one plausible reading. That said, absent a showing that the personal property in question had at one point in time been taxed or taxable by Travis County, the Court concludes that Travis County's tax lien has not attached to the Jefferson County property liquidated by the Trustee.

## PARTIES' CONTENTIONS

Texas Tax Code section 32.01 is the current statute controlling the creation, attachment, and perfection of statutory tax liens. Tex. Tax Code Ann. § 32.01 (West 2012). It is the relevant statute in the present case. It reads, in its entirety, as follows:

> (a) On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

3

(b) A tax lien on inventory, furniture, equipment, or other personal property is a lien in solido and attaches to all inventory, furniture, equipment, and other personal property that the property owner owns on January 1 of the year the lien attaches or that the property owner subsequently acquires.

(c) If an owner's real property is described with certainty by metes and bounds in one or more instruments of conveyance and part of that property is the owner's residence homestead taxed separately and apart from the remainder of the property, each of the liens under this section that secures the taxes imposed on that homestead and on the remainder of that property extends in solido to all the real property described in the instrument or instruments of conveyance, unless the homestead is identified as a separate parcel and is separately described in the conveyance or another instrument recorded in the real property records.[1]

(d) The lien under this section is perfected on attachment and, except as provided by Section 32.03(b), perfection requires no further action by the taxing unit.[2]

Tex. Tax Code Ann. § 32.01 (West 2012). Travis County's argument is based upon a literal reading of subsection (b) in isolation as creating a separate class of tax liens distinct and apart from those contemplated in subsection (a). Subsection (b) states that a tax lien on the specified types of personal property[3] attaches to all those specified types of property that the property owner owns. Focusing on the word "all," Travis County's conclusion is that location of the personal property is not relevant for the purposes of tax liens contemplated in subsection (b) because that subsection does not expressly limit its scope to the boundaries of taxing jurisdictions. In other words, Travis County argues that tax liens on personal property attach to all such property of property owners wherever it may be located. Therefore, Travis County suggests the prospect of Texas statutory law creating a municipal or county tax lien that attaches to personal property located in other states or countries.

The Trustee argues that subsection (b) does not create a separate category of tax lien for

---

[1] Subsection (c) was added after 1993 and does not affect the outcome of this case.
[2] Texas Tax Code Annotated § 32.03(b) (West 2012) concerns bona fide purchasers for value of liens recorded on manufactured home statements of ownership. It is not relevant to this case and therefore the reference to it can be ignored for the purposes of the Court's analysis.
[3] For simplicity sake, this Opinion will refer to the collective types of property listed in subsection (b) as "personal property."

4

personal property. Instead, subsection (b) indicates that a tax lien attached to personal property by subsection (a) attaches in its entirety to each individual item of personal property and that similar after-acquired personal property will fall under pre-existing tax liens. Taken together, these two clauses enable taxing authorities to enforce their tax liens without having to prove that each individual piece of personal property was the subject of the relevant assessed tax. The key to this approach is reading subsection (b) in the context of the requirements of subsection (a).

## ANALYSIS

This Court's analysis of Texas law begins with statutory construction, a process the Court approaches as a Texas court would. ***Gen. Elec. Capital Corp. v. Se. Health Care, Inc.***, 950 F.2d 944, 950 (5th Cir. 1991). In Texas, the first rule of statutory construction is to ascertain the "legislature's intent," and to attempt to give effect to that intent. ***Union Bankers Ins. Co. v. Shelton***, 889 S.W.2d 278, 280 (Tex. 1994). When seeking to determine legislative intent, the courts may "look to the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternate constructions." *Id.*

I.  **Language of Section 32.01(a) and (b)**

Section 32.01(a) of the Texas Tax Code provides that a tax lien on property attaches for all taxes, penalties, and interest ultimately imposed for the year on the property. Tex. Tax Code Ann. § 32.01 (West 2012). By attaching the lien to "the" property, subsection (a) explicitly creates a link between taxed property and subsequent tax liens. In other words, subsection (a) plainly limits tax liens by stating that they attach to the property against which taxes, interest, and penalties were imposed. Furthermore, the last sentence of subsection (a) states that tax liens exist in favor of each taxing unit having the power to tax the property. This indicates that the statute contemplates there being a required relationship between the power to tax an item and the

5

power to place a tax lien on that item.

Section 32.01(b) is subject to two alternative readings. Travis County advocates a three-clause interpretation of subsection (b) that should be read in isolation from subsection (a) whereas the Trustee supports a two-clause reading of the subsection (b) that clarifies the tax lien powers established in subsection (a).

As Travis County reads it, subsection (b) states that a tax lien on personal property 1) is a lien *in solido* and attaches to 2) all personal property owned by the property owner and 3) all personal property that the property owner subsequently owns. Under this reading, the word "all" indicates without limits that all personal property of the property owner is subject to the tax lien; there are no reservations based upon that property's situs or lack of relationship to the taxing authority in whose favor the tax lien attaches.

As the Trustee reads it, subsection (b) states that a subsection (a) tax lien on personal property is 1) a lien *in solido* on all that property and also 2) the similarly situated subsequently acquired property of the property owner. Under this reading, the word "all" clarifies that a tax lien created by a tax obligation arising out of equipment also attaches to furniture, a tax lien created by an obligation arising out of ownership of inventory also attaches to other personal property, and so on.

Both of these interpretations of section 32.01(b) are reasonable on their surface. Because subsection (b) is not subject to a single, plain meaning construction, the Court will consider other factors in determining which proposed construction it should apply.

II. **The Legislative History of Section 32.01(a) and (b)**

Prior to 1982, section 32.01's predecessor statute in the Texas Revised Civil Statutes concerning local tax assessment and collection provided that "[t]he assessor and collector shall

6

have power to levy upon any personal property to satisfy any tax imposed by this title. All taxes shall be a lien upon the property upon which they are assessed . . . ." Tex. Rev. Civ. Stat. Ann. art. 1060 (1963) (repealed 1982). The tax lien statute found in article 1060 did not contain corollaries to subsections (b), (c), or (d) as found in the present iteration of section 32.01. In short, while tax collectors could levy upon "any personal property," the tax liens themselves attached only to the particular property that was taxed. This mirrors the authorization contained in the present section 32.01(a).

The original version of section 32.01, which became effective in 1982, included only what is now subsection (a). At that time, it read as follows:

> On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on that property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of the state and each taxing unit having power to tax the property.

Acts 1979, S.B. 621, 66th Leg., p. 2287, ch. 841, § 1, eff. Jan. 1, 1982. In 1983, the Texas Legislature ("Legislature") amended section 32.01 slightly, so that the last sentence read "[t]he lien exists in favor of each taxing unit having power to tax the property." *See* H.B. 1203, 68th Leg., ch. 841, § 22, Reg. Sess., eff. Aug. 29, 1983 (indicating the changes made). The Legislative Budget Board indicated that the changes made by the amended version were not anticipated to have fiscal implications to the State or units of local government. Fiscal Note, Tex. H.B. 1203, 68th Leg. R.S. (April 4, 1983). From that, the Court concludes that the minor modification made in 1983 did not substantively change section 32.01(a), which means that tax liens still clearly only attached to the personal property that was taxed.

It was not until 1993, right in the middle of the taxing period asserted by Travis County in this case, that the Legislature added what are now subsections (b) and (d) to section 32.01. Subsection (d) is relevant only inasmuch as it made clear that tax liens perfected upon

7

attachment, a point that does not directly impact the dispute between Travis County and the Trustee.

In the 1993 amendments, subsection (a) received a non-substantive modification. *See* S.B. 893, 73rd Leg., ch. 1031, § 3, Reg. Sess., eff. Sept. 1, 1993 (changing "that property" to "the property"); Senate Research Center, Bill Analysis, Tex. S.B. 893, 68th Leg. R.S. (Apr. 26, 1993) (denominating change from "that" to "the" as being nonsubstantive). Subsection (a) therefore continued to indicate that tax liens attach to the property being taxed and not to any and all property of the tax owner, regardless of location. Subsection (b) was added in the form that it maintains in the current Tax Code. S.B. 893, 73rd Leg., ch. 1031, § 3, Reg. Sess., eff. Sept. 1, 1993.

Subsection (b) was one amendment among many made to the original proposed bill. *See* Amendment No. 3, S.B. 893, ch. 1031, 73rd Leg., Reg. Sess. (May 26, 1993) (proposed by Representative Berlanga). The Ways and Means Committee approved the amendments, including the addition of subsection (b), with little discussion and with no reference being made to any broad expansion of the bounds of tax liens. *See* Hearing on S.B. 893 Before the H. Comm. on Ways & Means, 1993 Leg., 73rd Sess., Reg. Sess. (Tex. May 20, 1993) (discussing amendments briefly before unanimous vote to accept the amendments). The full House approved the amendments, once again with no discussion of subsection (b) and no reference to the abolishment of the requirement that the attachment of tax liens be limited to property subject to the jurisdiction of the taxing authority in whose favor the lien is created. *See* House of Representatives Floor Debate on S.B. 893, 1993 Leg., 73rd Sess., Reg. Sess. (May 26, 1993).

The question now becomes: did the Legislature intend to materially expand the tax lien power such that tax liens on personal property transcended jurisdictional boundaries and attached

8

to such property wherever located, or did the Legislature intend to clarify the attachment mechanism laid out in subsection (a) without substantively altering the requirement that a taxing authority's statutory tax liens attach to property subject to that authority's power to tax? Did the Legislature intend for subsection (b) to do away with the longstanding statutory requirement reflected in subsection (a) that tax liens attach to property related to the tax that created the lien?

### III. The Objective of Subsection 32.01(b)

The Court finds that subsection (b) was enacted for two purposes, each of which retain the traditional statutory emphasis on relating tax liens to the property being taxed and thereby preserving both a relationship between the power to tax and the power to create a tax lien as well as the relative independence of taxing authorities such as Travis County. First, a tax lien created against personal property creates joint and several liability on all of the personal property. Second, a tax lien on the specified types of personal property progressively attaches to similar after-acquired property.

#### A. Lien in Solido

Black's Law Dictionary defines "*in solido*" as "creating joint and several liability." Black's Law Dictionary 867 (9th ed. 2009). Where a tax lien levied collectively against various items of property exists *in solido*, the lien exists not on a piece-by-piece basis but against the entirety of the collective property. If a property owner owes ten dollars apiece (one hundred dollars total) in personal property taxes for ten pieces of equipment, then the lien is not ten dollars against each piece of equipment; rather, because a lien *in solido* creates joint and several liability, the lien would be for one hundred dollars against any and all of the ten pieces.

As a practical matter, the sensibility of *in solido* tax liens is obvious. If ten dollars apiece in taxes were owed on ten pieces of equipment and there were no *in solido* liability, the taxing

9

authority could only enforce its lien in parts, ten dollars per piece of equipment. This would result in the colossal inefficiency of requiring the taxing authority to sell all ten pieces of equipment and take ten dollars out of the proceeds of each sale. *In solido* liability allows the taxing authority to sell one piece of equipment and use the one hundred dollars in proceeds to satisfy the entire tax lien, leaving the property owner with nine pieces of equipment.

In *City of Dallas*, the court had to determine the amount of taxes and property secured by a tax lien on a jeweler. **City of Dallas v. Cornerstone Bank, N.A.**, 879 S.W.2d 264, 266 (Tex. App.—Dallas 1994, no writ). The court held that section 32.01 created a blanket lien on the jeweler's inventory as opposed to liens on the specific items against which the tax had been assessed. *Id.* at 271. Although dealing with an older version of the Tax Code that did not include subsection (b), the court made a footnote of the present version of the Tax Code and emphasized in italics the present subsection (b). *Id.* at 269. This Court understands that italicization to be the *City of Dallas* court's acknowledgment that the Legislature crafted subsection (b) in order to clarify the extent of subsection (a). Because *City of Dallas* was decided based upon the version of section 32.01 that predated the addition of subsection (b), it is reasonable to conclude that the portion of subsection (b) discussing *in solido* liens was added in order to clarify pre-existing law as to the extent of a subsection (a) tax lien on personal property.

B.    **After-Acquired Property**

Article 1060 of the old Revised Civil Statutes governed the creation of tax liens on personal property, stating that "[a]ll taxes shall be a lien upon the property upon which they are assessed . . . ." Tex. Rev. Civ. Stat. Ann. art. 1060 (1963) (repealed 1982). Thus, under the old Revised Civil Statutes tax liens could not attach to after-acquired property. For instance, in *City of Lubbock*, the city of Lubbock claimed to have created by ordinance a floating tax lien over

10

subsequently acquired property. *City of Lubbock v. S. Plains Hardware Co.*, 111 S.W.2d 343, 345 (Tex. Civ. App.—Amarillo 1937, no writ). The district court determined that the city's tax claim against the furniture and fixtures of the corporation in receivership were recognized liens, but that the city had no lien against the merchandise of the corporation because the city could not show that the merchandise was owned by the corporation on the date that the taxes due were levied. *Id.* at 344. The city appealed, but the court of appeals affirmed on the grounds that the city could not extend by ordinance the limited taxing authority given to it by statute, and that the statute required that the tax lien could only attach to the property that was being taxed. *Id.* at 346.

The *City of Lubbock* case illustrates one of the central difficulties of attaching a tax lien to inventory, equipment, and other personal property whose existence and location at the time of the tax levy can be nearly impossible to trace at the time a tax lien is being enforced. For example, it would be an inefficient and costly matter to require taxing authorities with purported tax liens on inventory held for sale in a place of business to prove that each item was the particular item subject to the tax levy and thereby subject to the tax lien. If the amount owed were relatively small, a savvy property owner could force the taxing authority to release its claims to a lien instead of incurring the costs of proving that the inventory subject to the lien was the same inventory upon which the tax had been levied.

Subsection (b) addresses the problem of after-acquired property. When it says "or that the property owner subsequently acquires," it clearly and succinctly provides that a tax lien on personal property may attach to similar property even if it is acquired after the tax is levied. The addition by the Legislature of the after-acquired property clause of subsection (b) does amount to a material modification to the extent of subsection (a). Nevertheless, this does not necessarily

11

indicate that the Legislature intended to alter the central tenet of subsection (a), which is that the ability to attach a tax lien to property is directly related to the jurisdictional authority to tax that property.

C. **Section 32.01 Does Not Create Two Distinct Categories of Tax Liens**

Travis County's interpretation of section 32.01 is based upon an assumption that subsection (a) and subsection (b) create two distinct categories of tax liens: one for inventory, furniture, equipment, and other personal property, and another for property in general. Under Travis County's reading of the statute, the lien *in solido* would create a tax lien in favor of Travis County that would attach and perfect against personal property held by property owners regardless of the situs of that property. Moreover, the after-acquired property clause would create a floating lien in favor of Travis County against all personal property subsequently acquired by the Debtor. In other words, Travis County contends that its tax liens can exist against property over which it has never had jurisdiction to tax, property that has never had situs in Travis County.

Travis County's construction of the statute would have more force if the word "property" in subsection (a) referred only to real property. If that were the case, then a clear distinction would exist between location-specific tax liens for real property [hypothetical subsection (a)] and non-location specific tax liens for certain other property types [subsection (b)]. Tax Code § 1.04 defines "Property" as follows: any matter or things capable of private ownership. Tex. Tax Code Ann. § 1.04 (West 2012). When used without modifiers in the Tax Code, the lone word "property" must be taken in its broadest and most literal sense. When subsection (a) refers to "property," it is thereby referring to every category of property, including those listed in subsection (b). The logical conclusion, therefore, is that subsection (b) is not separate and

12

distinct from subsection (a); instead, the second subsection should be read as a clarification as to a subset of the general category "Property."

### D. Structure of the Texas Tax Code

This conclusion is buttressed by the format used in the Texas Tax Code. Generally speaking, each section is laid out in lettered subsections. Each subsection addresses the issue identified in the heading of the section: for example, section 32.01 has the heading "Tax Lien," and each subsection contained therein relates to tax liens. Where one subsection is to be materially contradicted by another subsection, one of three approaches is used:

1) the inclusion of "except as provided by" language. There, a subsection will include the cautionary statement "except as provided by Subsection (_) of this section."[4] The named subsection then creates a different rule or standard that will apply to that distinct circumstance.[5]

2) clearly distinguishing that more than one category of result is being established. In general, this approach uses "if this", "if the other" type language and the two categories are necessarily mutually exclusive.[6]

3) utilizing numbered lists under a subsection. Here, the subsection will contain a general description and the numbered list will lay out the specific categories included in that general description.[7]

Section 32.01 does not contain any of these three approaches to establishing categories. It does not include "except as provided by Subsection (_)" language, it does not include two

---

4 *See, e.g.*, Tex. Tax Code Ann. § 31.02(a) (West 2012) (noting particular subsections and sections that require particular circumstances to achieve different results than those contemplated in § 31.02(a)); Tex. Tax Code Ann. § 32.03(a) (West 2012) (noting particular subsection that requires a particular circumstance to achieve a different result than that contemplated in § 32.02(a)).
5 *Id.*
6 *See, e.g.*, Tex. Tax Code Ann. § 32.014(a)-(b) (West 2012) (discussing tax liens on mobile homes).
7 *See, e.g.*, Tex. Tax Code Ann. § 32.05(b) (West 2012) (listing the types of claims over which a tax lien takes priority).

mutually exclusive categories, and it does not create categorical distinctions by means of numbered parts to a subsection. Including any of these three approaches would have clearly evidenced the Legislature's intent that subsection (a) was not expected to apply to the circumstances covered by subsection (b). The fact that none of them is used suggests that the Legislature did not intend subsection (b) to be a separate category of tax lien existing outside of the context of subsection (a).

## IV. Practical Concerns

Travis County's interpretation of section 32.01 could create inequitable results that the Court doubts were intended by the Legislature. Under subsection 32.05(b), tax liens provided for by Chapter 32 of the Tax Code have equal priority. Tex. Tax Code Ann. § 32.05(b) (West 2012). Prior to the 1993 amendments, when only subsection (a) existed in the statute, this meant that local taxing authorities with concurrent authority to tax property would have equal priority, competing liens on that property.

Under Travis County's reading of the statute, subsection (b) would dramatically increase direct competition among unassociated taxing authorities. Imagine a situation in which County *A* has high tax rates and holds a large personal property tax lien against a property owner who has little personal property remaining in County *A*; County *B* has low tax rates and holds a small personal property tax lien against the same property owner, but the property owner's personal property in County *B* is sufficient to meet its obligations on County *B*'s small tax liens. Under Travis County's reading of section 32.01, County *A*'s tax lien would come into competition with County *B*'s tax lien as they relate to the property owner's property in County *B*. In essence, County *A*'s large tax lien could virtually wipe out County *B*'s tax lien even though the personal property in question had only ever been located in and taxed by County *B*. Moreover, Travis

14

County has a large tax lien against the Debtor. If its tax lien attaches to the Debtor's personal property regardless of location, that large tax lien could effectively wipe out smaller tax liens held by taxing authorities that actually assessed taxes against the property.

In sum, notwithstanding the fact that a bankruptcy court in Arizona appears to have accepted Travis County's interpretation of the statute,[8] the Court finds that such interpretation fails to consider subsection (b) in its broader context. For the foregoing reasons, the Court determines that subsection (b) is meant to clarify subsection (a) to protect local taxing authorities from non-paying property owners. Further, subsection (b) is not meant to enable local taxing authorities to cast their tax liens on property regardless of their lack of power to tax that property due to it having situs in another taxing authority's jurisdiction. This clarification was accomplished in two parts: first, by specifying that a tax lien on various items attaches to the items as a group and not on an item-by-item basis; second, by making it clear that a tax lien on the specified types of property—each of which is often not subject to title or deed filing requirements and therefore is highly fungible—will also attach to future acquired similar personal property in such a way that property owners cannot claim to have transferred their liability on tax liens by replacing the property that was taxed with other similar personal property.

## CONCLUSION

For the foregoing reasons, the Court concludes that the statutory tax liens in this case should be considered in conjunction with the jurisdictional limits of the taxing authority, as indicated in the last sentence of subsection (a). Therefore, in this case the Travis County tax liens against the personal property of the Debtor attached only to that personal property that was

---

8 See **In re Magnus Fin. Corp.**, 415 B.R. 416, 424 (Bankr. D. Ariz. 2009) ("Presumably, such 'floating' lien attaches to all personal property belonging to the owner no matter where it is located.").

located in Travis County or the appropriate taxing jurisdiction. The Trustee's Objection will prevail and the Travis County tax lien is deemed to have attached and perfected only to the property that was located in and disposed of by the Trustee in Travis County. The property sold in Jefferson County is not subject to the Travis County tax lien.

    IT IS SO ORDERED.

# # #